BULLOCK *vs.* KOON.

*Slander* will not lie for charging a witness with perjury whilst testifying before arbitrators, if, *after* the oath is administered to him, *new parties* are added to the arbitration and *new matters in controversy* are submitted to be passed upon, and the charge be made in reference to what is said by the witness after such addition of parties and matters in controversy.

*It seems,* that in testing the materiality of testimony charged to be false, reference must be had to the issue as it existed when the oath was administered to the witness.

THIS was an action of slander, tried at the Rensselaer circuit in June, 1828, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The words charged to have been spoken by the defendant were spoken whilst the plaintiff was testifying as a witness at an arbitration. On the 17th February, 1826, arbitration bonds were entered into by *Nathaniel Payne* on the one part and *Thomas Thompson* on the other; William Carmichael and Henry Koon were surities for Payne, and executed the bond with him. The bonds after *reciting* that Thomas Thompson had contracted with a turnpike road company, (called the Eastern Union Turnpike Company,) to make a certain road for the sum of $1600, that Payne became a partner with Thompson in that contract, to have an equal share with him according to what he should do, that subsequently Thompson and Payne contracted with the same company to build a bridge for the sum of $160, that extra work had been done amounting to $43, and that an account had been opened with one Calvin Thompson, were *conditioned* to abide the award of three arbitrators or either two of them, of and concerning " all things and matters between the said parties concerning the said work and labor, and expenses done and performed by and between the said parties ; and also all dealings between the said parties, and each to share an equal proportion of the loss and gain, according, and in proportion to what labor each one has done ; bearing in view the said contract as entered into by the said Thompson and the said Payne concerning the said road, and all other private ac-

counts between the said parties." On the 26th February the arbitrators proceeded to a hearing, and the plaintiff in this cause was sworn and examined as a witness. An adjournment then took place until the 15th March, when the hearing was resumed, and a question arose whether a certain demand set up by Thompson, called "Calvin Thompson's private account against Payne," was within the submission: whereupon an instrument in writing under seal was entered into by the parties to the original submission, viz. Payne and Thompson, and one *Calvin Thompson*, by which, after reciting the submission of the 17th February, 1826, referring to the arbitration bonds, and after reciting that Nathaniel Payne had been indebted in divers sums of money to *Calvin Thompson*, the whole or a part of which *Thomas Thompson* alleged he had paid by the request and assent of Payne, *it was covenanted and agreed*, by and between Payne and N. Thompson and C. Thompson, that proof might be admitted before the arbitrators named in the original arbitration bonds of any demand of *Calvin Thompson* against Payne then due, or which had been paid by *Thomas Thompson*, and in like manner proof should be admitted of any demand of Payne against *Calvin Thompson :* that such demands of Thomas Thompson and Calvin Thompson against Payne as the arbitrators should approve should be considered by them as due *to* Thomas Thompson, and that such demands of Payne against Thomas Thompson and Calvin Thompson as the arbitrators should approve should be considered as demands due *from* Thomas Thompson, in the same manner as if the demands due to and from *Calvin Thompson* had been the individual accounts of *Thomas Thompson.* And it was further agreed that the award to be made should be a perpetual bar to all claims and demands of *Calvin Thompson* against Payne, and of Payne against Calvin Thompson ; and that if either of the parties to the instrument should revoke the powers of the arbitrators, he should pay to the other party $500 as liquidated damages and not as a penalty. After the instrument was executed, the plaintiff in this cause was again called as a witness, and testified to an admission made by Payne as to the correctness of *the private account of Calvin*

*Thompson against Payne;* and whilst so testifying, the defendant in this cause, who was acting as the counsel of Payne at the hearing, being in a passion said, "It is a damned lie; he is swearing to a lie;" or, "He has sworn to a lie, and has sworn differently before;" for the speaking of which words this action was brought.

It appeared in evidence that *Calvin Thompson* was a merchant and the treasurer of the turnpike company with which Thomas Thompson had contracted to make the road, &c.; that on hearing before the arbitrators it was proved that Thomas Thompson and Payne had directed *Calvin Thompson* that all money and goods taken up by Thomas Thompson should be charged to his *individual* account; that all money and goods taken up by Payne should be charged to his *individual* account; and that whatever was got to be used on the road should be charged to their *joint* account. The admission testified to by the plaintiff related to these accounts, the plaintiff stating that he was present at a settlement between *Calvin Thompson* and Payne, when Payne consented that Calvin Thompson's private account, i. e the account against him *individually*, should be endorsed on Thomas Thompson's contract with the turnpike company. Thomas Thompson testified on the trial of this cause, that the amount of Calvin Thompsons account against Payne *individually* was about $500, and he supposed that the whole of it was endorsed on the contract with the company, and that such endorsemnnt was made with the assent and by the direction of Payne ; he however said that he could not be positive that *the whole* of such account was endorsed on the contract.

The counsel for the defendant moved for a nonsuit on the ground that the instrument of the 15th March, 1827, *changed* the parties to the submission, and that the testimony given by the plaintiff at the time of the speaking of the words complained of was not given in the *same* arbitration in which his former testimony was given; and that the plaintiff not having been again sworn after the execution of the second writing, he would not have been subject to an indictment had he been guilty of false swearing in speaking the words charged as slanderous. The judge denied the mo-

NEW-YORK, tion, but reserved the question for the decision of this court.
May, 1830. There was other evidence in the case, and other questions
Bullock     were presented and argued at the circuit and also in bank,
v.          which was deemed unnecessary to be stated, not being pass-
Koon.       ed upon by the court. The jury found for the plaintiff with
$550 damages.

*J. P. Cushman,* for plaintiff.

*H. P. Hunt,* for defendant.

*By the Court,* MARCY, J. If the plaintiff was under oath
at the time the defendant uttered the words set forth in the
declaration, and was then testifying in a pending cause, they
are actionable, unless it should appear that the matter about
which he was giving testimony was immaterial to the issue to
be tried when the oath was administered to him.

Two questions are presented for our consideration: First,
Did the second instrument create a new cause, or so much
so that it became necessary again to swear the witnesses who
had been sworn on the first meeting of the arbitrators? Sec-
ondly, If this was not so, and the second instrument made
matters material that were not embraced in the first submis-
sion, would a witness be guilty of perjury if he wittingly mis-
stated to the arbitrators facts material under the second instru-
ment, but which were not so at the time the oath was admin-
istered to him? .

The words spoken by the defendant are not *per se* action-
able, but they are made so by certain circumstances: the
pendency of a cause before the arbitrators, the oath taken
by the plaintiff as a witness in that cause, and his examina-
tion as such witness. These circumstances the plaintiff must
aver in his declaration and prove, as was decided in this very
cause when it was formerly before this court. (9 Cowen,
30.) The pleadings do not accompany the case, but it was
said on the argument that the declaration stated the arbitra-
tion to be pending between *Nathaniel Payne* and *Thomas
Thompson.* This I presume, is correct; for if it had been
otherwise, there would have been a fatal variance in relation
to the proof concerning the oath taken by the witness. When
he was sworn to testify, *they* were the only parties to the

issue, and there could not have been at that time any pre-
tence that there was any other party. But it is said that
when the plaintiff did testify to what the defendant alleged to
be a lie, the parties were Nathaniel Payne, Thomas Thomp-
son and Calvin Thompson. Whether this be so or not, must
be determined by the inspection of the second instrument.

A question arose as to what was included in the first sub-
mission. The extent of what Thomas Thompson contend-
ed for was that such part of the private account of Calvin
Thompson against Payne as he had paid at Payne's request
and with his assent, was within the first submission. But it
will be perceived that the second instrument embraces much
more than the matter involved in this dispute. It includes
the whole of *Calvin Thompson's* account against Payne,
whether it had been paid by *Thomas Thompson* or not.
Furthermore, it embraces Payne's account against Calvin
Thompson, which was certainly in no way in dispute, and
by no possible construction could have been brought within
the first submission. By the last instrument the arbitrators
had power to bind both Payne and Calvin Thompson as to
their respectice private accounts, and the award was to be a
perpetual bar of all claims and demands of each against the
other; no such matter was included within the scope of the
first submission. The fact cannot be controverted that the
instrument of the 15th March, 1826, brought new matters
before the abitrators, subjected to their power another per-
son, and enlarged that which they had over the former par-
ties. These are strong facts to show that the new instru-
ment was more than a modification of the original submis-
sion.

If the arbitrators, acting under the powers given to them
by both instruments had awarded a large sum to be paid by
Payne, would his sureties, Carmichael and Koon, have been
bound by the award? I apprehend not. They could have
said in exoneration of themselves, that the arbitrators had
passed upon matters not contained in the submission to which
they had become parties or sureties. Had Payne revoked
the powers of the arbitrators, on which instrument would he
have been liable? The last clause in the second instrument
does not, by the natural import of its language, refer to the

NEW-YORK, additional powers conferred thereby, but to the general au-
May, 1830. thority of the arbitrators. If Calvin Thompson had revoked,

Bullock could the arbitrators have properly entertained jurisdiction
v. over him, or awarded on his account or on Payne's account
Koon. against him? On this question I think there can be no doubt,
and it is very difficult to see how he could derive power to
control or affect the proceedings of the arbitrators, unless he
was a party to the submission.

Again: it is a general principle that those only who are
parties to the submission shall be bound by the award.
(Kyd on Awards, 42.) Will it be seriously urged that Calvin
Thompson was not bound by the award? He agreed to sub-
mit his accounts against Payne, and engaged, under his hand
and seal that the award should be a perpetual bar to them.
If it had not been the intention of Payne and Thomas
Thompson to bind him, and if they had not supposed that
they had done enough to bind him, they would not have es-
timated the damages they might suffer by a revocation of the
powers he had given to the arbitrators at five hundred dollars,
and exacted of him a covenant to pay that sum. In any
point of view in which the case can be presented, Calvin
Thompson appears to be a party to the submission. The
accession of an entire new party, and the addition of new
matters of dispute, made a new submission. My opinion is
that when the plaintiff was examined before the arbitrators
the last time, it was in a different cause from that in which he
was sworn and examined the first time, and when the defend-
ant made the charge against him he was not under the obliga-
tion of the oath he had formerly taken.

My views on this point render it unnecessary to examine
the question whether if the parties enlarged the powers of the
arbitrators after a witness had been sworn, and thereby made
that material which was not so when the oath was taken, he
could be convicted of perjury in relation to what was ren-
dered material after the oath was administered to him. I
am inclined to think that in testing the materiality of what a
witness swears to, reference should be had only to the issue
as it was when the oath was administered.

Judgment for defendant.